**IN THE COURT OF APPEALS OF IOWA**

No. 23-0904
Filed August 30, 2023

**IN THE INTEREST OF A.S.-T.,**
**Minor Child,**

**M.T., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Wapello County, William S. Owens,

Judge.

    A mother appeals the termination of her parental rights.  **AFFIRMED.**

    Patricia J. Lipski, Washington, for appellant mother.

    Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

    Nicole Christine Steddom, Oskaloosa, attorney and guardian ad litem for

minor child.

    Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights. The mother did not preserve error on her claim that the State did not engage in reasonable efforts to reunite her with her child. And placing the child in a guardianship with a relative is not in the child's best interests. Rather, the child's best interests are met by termination of the mother's parental rights. We affirm the juvenile court's decision.

## I. Background Facts & Proceedings

M.T. is the mother of A.S.-T., who was born in 2019.[1] The child came to the attention of the Iowa Department of Health and Human Services (HHS) in January 2021 based on concerns of substance abuse by the mother. There were also concerns because the mother permitted a person with mental-health and substance-abuse issues to care for the child. The mother also allowed a registered sex offender to care for the child. On removal, A.S.-T. tested positive for methamphetamine, and the mother tested positive for methamphetamine and ecstasy. The child was removed from parental custody and placed in foster care.

On February 26, the child was adjudicated to be in need of assistance, under Iowa Code section 232.2(6)(c)(2), (n), and (o) (2021). The mother was in a residential substance-abuse treatment program, and the child was returned to her within that program. The mother successfully completed the program. But her success was short lived, as in early September she tested positive for

---

[1] The child's legal father is A.S. The child's putative father, T.A., did not participate in paternity testing to determine whether he was the child's biological father. The parental rights of A.S., T.A., and any other putative fathers were terminated. The fathers do not appeal.

methamphetamine. The child was again removed from her custody and placed back in foster care.

The mother entered an inpatient substance-abuse treatment program in May 2022 but left soon after. She completed a new substance-abuse evaluation in July and entered outpatient treatment while waiting to get into an inpatient program. Following a permanency review hearing in September, the court extended the proceedings by three months. The mother's struggles with her sobriety persisted.

On January 30, 2023, the State filed a petition seeking termination of the mother's parental rights. The mother entered a new substance-abuse treatment program. At the termination hearing, held on March 14, she testified she had an appointment for a mental-health evaluation but had not started treatment. The mother had been in relationships that involved domestic violence; she stated she was working on her co-dependency issues. She asked to have the child placed with her. In the alternative, she asked to have the child placed in a guardianship with her sister.

The court terminated the mother's parental rights under section 232.116(1)(h) (2023).[2] The court found:

---

[2] Section 232.116(1)(h) provides for termination of parental rights when the court finds:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

> The child could not be safely returned to either parent. The parents have not taken advantage of the more than ample time and opportunity provided to achieve reunification. [A.S.-T.] is a child that needs permanency, and neither parent is in a position to provide [the child] the permanency he needs and deserves.

The court found that termination of the mother's parental rights was in the child's best interests. The court also determined that none of the permissive exceptions to termination found in section 232.116(3) should be applied. And finally, the court found an extension of time would not be appropriate. The mother now appeals.

## II.    Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3)

---

> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

should be applied. *Id.* However, in instances like this where the parent does not raise a claim relating to any of the three steps, we do not address them and instead limit our review to the specific claim presented. *See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

### III. Reasonable Efforts

The mother claims the State did not engage in reasonable efforts to reunite her with the child. She asserts that she requested "additional visitation, longer visitation periods, less supervision of visits, assistance with transportation, assistance in seeking appropriate mental health resources and substance abuse treatment alternatives, and numerous other services," and these services were not provided to her.

"Reasonable efforts are services to 'preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home.'" *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019) (quoting Iowa Code § 232.102(10)(a)). The reasonable efforts requirement is not a strict substantive requirement for termination, but the scope of the efforts offered by HHS impacts the burden of proving the elements of termination. *C.B.*, 611 N.W.2d at 493.

The record does not reflect that the mother requested the additional services that she now lists on appeal. Although HHS must make reasonable efforts toward reunification, "parents have a responsibility to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). An objection to services must be made before the

termination hearing, or it has been waived. *Id.* at 840. We conclude the mother's arguments related to reasonable efforts have been waived. *See id.*

And even if we were to address the issue of reasonable efforts, we would determine that the services provided to the mother were reasonable. We consider whether the State's efforts were reasonable under the unique circumstances of the case. *See In re A.D.*, No. 21-1562, 2022 WL 246227, at *2 (Iowa Ct. App. Jan. 27, 2022). The court's permanency ruling on September 13, 2022, found HHS "made reasonable efforts to prevent removal of the child, and to finalize a case permanency plan report for the child. Those services include [family centered] services, substance-abuse treatment services, and other services listed in the case plan report."

## IV. Best Interests

The mother contends that termination of her parental rights is not in the child's best interests. She argues that rather than terminating her parental rights, the court should have placed the child in a guardianship with the child's maternal aunt.[3]

In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the

---

[3] The mother also raises an alternative argument, requesting the child be placed with the maternal aunt if the mother's rights were terminated. This argument is not ripe, as the decision on the placement of the child post-termination was not yet decided at the time of the mother's appeal. *See In re I.B.*, No. 17-0429, 2017 WL 2191687, at *1 (Iowa Ct. App. May 17, 2017) ("Our rules of judicial restraint generally preclude appellate review of issues that depend on matters not yet developed.").

child under section 232.116(2)." *P.L.*, 778 N.W.2d at 40. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

"[A] guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). A guardianship does not provide the same level of stability and safety for a child as termination of parental rights and adoption because a guardianship is not permanent. *See In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018). "The impermanent nature of guardianships denies children the security and stability that a permanent home provides." *In re A.C.*, No. 23-0567, 2023 WL 3612382, at *2 (Iowa Ct. App. May 24, 2023).

The court found, "In sum, given the age of the child, the length of time the child has been removed, the lack of substantial progress toward reunification, and the availability of other viable permanency options it is clear guardianship would not be appropriate." We agree with the court's determination that placing the child in a guardianship would not be in the child's best interests, while terminating the mother's parental rights is in the child's best interests.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**